**Joe Lebron DEAVORS, Plaintiff,**

**v.**

**Irvin BURNHAM, Deputy Sheriff, et al., Defendants.**

**No. C-3-80-430.**

United States District Court, S. D. Ohio, W. D.

May 5, 1981.

Joe Lebron Deavors, pro se.

Kenneth R. Pohlman, Asst. Pros. Atty., Dayton, Ohio, for defendants.

DECISION AND ENTRY ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE IN FULL; CASE DISMISSED; JUDGMENT TO DEFENDANTS; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

The captioned cause came on to be heard upon the Plaintiff's objections to the Report and Recommendation of the United States Magistrate, filed October 23, 1980, recommending that the Plaintiff's complaint be dismissed for failure to allege either the deprivation of a Constitutional right or deprivation of due process that would warrant Federal Court intervention.

This is a prisoners civil rights action, filed pursuant to 42 U.S.C. § 1983. Plaintiff, a pro se litigant, currently incarcerated in the Southern Ohio Correctional Facility in Lucasville, Ohio, alleges that defendants, two Deputy Sheriffs of the Montgomery County Sheriff's Office, violated his rights under the equal protection and due process clauses of the Fourteenth Amendment by failing "to collect, perserve [sic] and protect the basic evidence," necessary to his defense against the state criminal charges for which he was convicted.* Plaintiff seeks $250,000 in compensatory and $250,000 in punitive damages. Plaintiff also seeks a declaratory judgment that the defendants' failure to preserve evidence violated his constitutional rights.

The "evidence" which is the subject of this lawsuit consists of an automobile, apparently owned by the murder victim (DiPino vehicle). It appears from plaintiff's complaint and memorandum that this vehicle came into defendants' custody shortly after a shooting had been reported in May of 1977. Its contents were inventoried, the vehicle itself was examined, and certain tests were conducted thereon. Thereafter, the vehicle was released from defendants' custody. The person or persons to whom the vehicle was released does not appear. The whereabouts of the vehicle subsequent to its release is not revealed in the complaint (or in any of the materials before the Court). Plaintiff is also silent as to what, if any, means were employed by him to secure the DiPino vehicle after it was released by defendants.

The matter came before the U.S. Magistrate, who recommended that the complaint be dismissed (doc. # 6, Report and Recommendation, October 24, 1980). The Magistrate concluded that plaintiff had failed to allege a deprivation of any rights secured under the Constitution or laws of the United States, and therefore, had failed to state a cognizable claim under 42 U.S.C. § 1983.

Plaintiff thereafter filed a Motion for Objection (doc. # 8). In support thereof, plaintiff reiterates that the defendants' failure "to collect, perserve [sic] and protect the basic Elements of Evidence" made it "totally impossible to disclaim the States charges" against him (*id.* at 2). He also asserts that certain evidence which may have been favorable to him had been destroyed.

After examining the file, this Court concluded that review of the report would be

* E. g., Aggravated Robbery and Aggravated Murder. *See,* doc. # 8, Motion for Objection, at 2.

facilitated by securing more details from plaintiff as to what he claimed occurred with respect to the DiPino vehicle. Therefore, in a letter dated April 6, 1981 (attached hereto as Appendix "A"), the Court requested plaintiff to respond to certain inquiries, to wit: what plaintiff and his attorney felt would have been in the automobile had they been able to secure it; and specifically, "what basic elements of evidence needed to be collected, preserved and protected." The Court also informed plaintiff that his response would be made part of his initial complaint.

Plaintiff promptly responded to the Court's inquiries by way of a letter, dated April 13, 1981 (copy attached hereto as Appendix "B"). As indicated above, this reply shall be, and is added to, and made part of the initial complaint. Elaborating upon his previous allegations, plaintiff asserts in this letter, *inter alia*, that he was unable to verify independently the accuracy of certain evidence obtained from the DiPino vehicle, which was introduced by the state at trial, including fingerprints, paint samples, and photographs; that the physical presence or accessibility of the DiPino vehicle at trial would have supported his testimony, would have enabled him to disprove that a robbery had been committed, and would have discredited certain damaging testimony given by Ms. DiPino; and that the unexplained disappearance of the inventory list made by defendants of the contents of the vehicle deprived him of certain exculpatory evidence, which he asserts could have been secured from the vehicle had it been preserved by the defendants.

In the letter, plaintiff also candidly apprises the Court that he cannot prove that the defendants acted with malicious intent when they released the DiPino vehicle from their custody. He admits that their actions were discriminatory and taken within the scope of their authority. Although he maintains that the defendants' actions were violative of his constitutional rights, plaintiff, at least tacitly, concedes he cannot recover money damages from the defendants under 42 U.S.C. § 1983.

Plaintiff then suggests an alternative avenue for relief. He urges the Court to treat his civil rights complaint as a petition for writ of habeas corpus. Admitting that he failed to exhaust his state remedies, he asserts that the exceptional circumstances of this case nonetheless justify issuance of a writ.

This Court has carefully considered the contents of plaintiff's letter of April 13th, together with his initial complaint and memorandum. However, even after reading this pro se complaint in the most liberal fashion possible, and taking all of the allegations therein as true, *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it appears to the Court that plaintiff can prove no set of facts that would entitle him to relief under 42 U.S.C. § 1983. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations simply do not support plaintiff's basic assertion that the defendants' release of the DiPino vehicle, after examining it and obtaining evidence from it that was subsequently introduced against him at trial, violated his rights under the equal protection and/or due process clauses of the Fourteenth Amendment.

The Court's research has uncovered no rule or regulation, of constitutional dimension or otherwise, which obligates law enforcement officers to retain custody of a tangible objection which is not subsequently used against a criminal defendant, but which may be useful to that defendant in meeting the charges against him. Nor is the Court aware of any rule or regulation which requires law enforcement officers to retain custody of any object from which inculpatory evidence is obtained until such time as an accused has had an opportunity to conduct his own examination of the object for the purpose of obtaining potentially exculpatory evidence, or to verify the findings and results of tests conducted upon the

object by the law enforcement officers. Simply stated, in the absence of a constitutional duty or obligation to retain custody of the DiPino vehicle for plaintiff's benefit, particularly in the absence of malicious intent, defendants cannot be held to have violated any of plaintiff's constitutional rights by releasing the vehicle.

Because the Court agrees with the U.S. Magistrate's determination that plaintiff has failed to allege a deprivation of any right secured under the Constitution or laws of the United States, and, therefore, that the plaintiff has no cognizable claim under 42 U.S.C. § 1983, the Court concludes that plaintiff's motion for objection to the Report and Recommendation is not well taken and same is, therefore, overruled. Said report is hereby adopted, and plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted.

Having so ruled, this Court need not address any of the other matters raised in plaintiff's letter of April 13, 1981, concerning any affirmative defenses which may have been successfully asserted by defendants, or the propriety of construing plaintiff's complaint as a petition for writ of habeas corpus. However, since Plaintiff is a pro se litigant, unschooled in legal matters, the Court wishes to make a few very brief comments with regard to plaintiff's contention that he is entitled to federal habeas relief.

Even assuming that the Court could properly convert this civil rights complaint into a petition for writ of habeas corpus, and assuming further that plaintiff had set forth some cognizable claim of constitutional deprivation, the Court is of the opinion that the circumstances of this case, as discerned from plaintiff's submissions, would warrant the invocation of the deliberate bypass doctrine, first articulated in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Therein, the Court held "that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Id.* at 438, 83 S.Ct. at 849.

Plaintiff, by his own admission, did not exhaust his state remedies on the issue of preservation of evidence. *See*, Letter of April 13, 1981, at 3. Plaintiff asserts that there are exceptional circumstances in this case; however, his allegations taken as a whole do not substantiate this assertion. It appears to the Court that plaintiff has known of the existence, and his perceived need of the DiPino vehicle, at least since trial, and probably prior thereto. Yet, plaintiff offers no explanation of any kind as to why he did not use avenues available to him to secure the vehicle after it was released, *see* Ohio R.Crim.P. 17, or why he failed to pursue his state remedies on the matter. The mere assertion that the deliberate by-pass doctrine ought not to be applied cannot suffice without a valid reason given in support thereof. Consequently, the Court would have no basis for exercising its discretion in the manner urged by plaintiff.

Having considered the complete content of plaintiff's letter of April 13, 1981, together with all other allegations and contentions, the Court concludes that plaintiff is entitled to no relief, either under 42 U.S.C. § 1983, or under the alternative avenue of federal habeas corpus.

Wherefore, based upon the foregoing, this Court adopts, in its entirety, the Report and Recommendation of the United States Magistrate rendered on October 24, 1980, and in so doing, overrules the plaintiff's objections thereto and, accordingly, orders the captioned cause dismissed, thus entering final judgment in favor of the Defendants and against the plaintiff herein.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

APPENDIX A

April 6, 1981
Joe L. Deavors
# 152–398
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, Ohio 45699
RE: Case No. C–3–80–430
Deavors v. Burnham, et al.

Dear Mr. Deavors:

As you are undoubtedly aware, the United States Magistrate, in a decision filed October 24, 1980, recommended that your complaint be dismissed for failure to allege either the deprivation of a Constitutional right or deprivation of due process that would warrant Federal Court intervention.

I find that I am unable to review this report without more detail on exactly what you claimed occurred. Specifically, I am interested in exactly what you and your attorney feel would have been in the DiPino vehicle had you been able to secure it. What basic elements of evidence needed to be collected, preserved and protected?

I would appreciate your dropping me a line with the answers to these questions. I will then make your letter part of your initial complaint. I will then proceed to rule on the sufficiency of Magistrate Steinberg's recommendation.

Sincerely,

WALTER H. RICE

WHR/tw

APPENDIX B

April 13, 1981

Walter H. Rice, Judge
United States District Court
Southern District of Ohio
200 West Second Street
P.O. Box 818
Dayton, Ohio 45402
RE: Case No. C–3–80–430,
Deavors v. Burnham, Et.Al.

Attention Judge Rice:

I humbly come to you once again, acknowledging the receipt of your letter dated April 6, 1981. Thank you for giving me the opportunity to present a few facts in a less formal platform, for it is written: ". . *pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers* . . ." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971); *Puckett v. Cox,* 456 F.2d 233 (6th Cir. 1972); *Weaver v. Denton,* 77–3024 (6th Cir. 1979),

In complying with your request in paragraph two (2) of your letter, it is so:

1. The majority of the states case against me is based upon fingerprints which the state claim are mine and which the state claim were taken from the DiPino vehicle.

2. It appeared in a suppression hearing and later at trial that certain paint samples were compared between the vehicle being driven by Mr. DiPino and a vehicle allegedly owned and operated by me at the time of the homicide.

3. Thus, it was imperative for defense counsel and the jury to be able to verify that the latent prints claimed to be mine were, infact, lifted from the DiPino vehicle. Also, it was imperative that defense counsel and the jury be able to verify that the red or maroon paint samples allegedly taken from the DiPino vehicle were, in fact, taken from the vehicle. It is almost standard procedure that at least photos be taken of the print before it is lifted from the surface to verify that the print was indeed, lifted from a surface, or in the instant case, the vehicle in question.

4. That the state had photographs of various angles of the vehicle, however, and a few photos which purportedly show latent prints on the DePino vehicle. Unfortunately, there was no way to independently verify thses photographs except through the use of prosecution witnesses which is obviously unacceptable.

5. The defendant's in the case at bar claimed that the *inventory* that was taken

by them, was lost, so all the contents of the car couldnot be verified, not in the pistol Mr. DiPino had in the car or the place under the seat of the drivers side where the gun was and especially designed to hold and conceal said gun.

6. There were no photographs of the deceased inside the vehicle, had the vehicle been avalable, we could have shown througha mere "demonstration" that according to Ms. DiPino's testimony it would have been impossible for the events to have transpired as she claimed, simply by comparing the bullet hole in the floorboard, with the position she claims I was standing and the position she claims the deceased was setting, we could have shown that Ms. DiPino was not telling the truth, because if the vehicle was available, that according to her testimony the jury would have seen that the bullet that passed through the deceased chest into the back of the car and ended up in the back seat or the door. Please keep in mind that the photos of the bullet hole in the vehicle show the bullet hole in the front floorboard, had the vehicle been available at trial or for inspection my testimony at trial would have been supported and substantiated merely because the deceased was leaning over reaching under the front seat as I stated and not as Ms. DiPino testified and this is why the bullet hole was in the front "floorboard," because of the deceased position at the moment the gun went off. You must keep in mind that Ms. DiPino was Herb Jacobson's "star" witness. Her testimony was the state's sole evidence that a robbery occurred, despite the fact that she stated that she handed Mr. Thompson a wallet containing money at a suppression hearing and later at trial, the very same wallet the coroner said he got out of the deceased pocket. Despite the fact she still had her pocket book, had the vehicle been available as can be seen herein, it would have completely destroyed Ms. DiPino's credibility.

7. Testimony at trial was to the effect that the DiPino vehicle was involved in a sideswiping incident on I–70 and this so-called sideswiping was suppose to have been my way of forcing the vehicle off the road in order to rob it's occupants, at least, this fiction was according to the State and it's witnesses, however, the truth of the matter is that a robbery never took place, had the vehicle been available, a careful examination of the tires would have shown that this vehicle wasnot forced off the road.

8. The State held *my car* to offer proof to their assertion and illusion, and also took the jury to *my car*, after the authorities had cut holes in my car and removed parts therefrom to make it look like my car was really used to "brutally force the Dipino vehicle off the road, had the DiPino vehicle been present and available, we could have shown the jury the DiPino vehicle, thus, showing that the dislocated and damaging parts of my car were not in accordance with the state's inrighteous assertions and so-called evidence, we could have done this by simply by showing to the jury the DiPino vehicle where similar damages and "holes" would have had to been located on said vehicle. However, there were not any damages of the kind on the DiPino vehicle, but since the vehicle was not present and available we couldnot show this. The State, as can be seen, used my car as a basic element in the offense, would this honorable court not agree that I should have had the DiPino vehicle as a basic element in my defense ? It would have only been a fair trial had I had this opportunity.

9. There are many more reasons that clearly demonstrates that it was a violation of my Constitutional Rights, 14th Amendment Clauses to not to have preserved the DiPino vehicle in the case at bar. There wasnot even an inventory of the contents of the vehicle in question and certain relevant parts of the interior and exterior, even if an inventory was avalable we could have shown that no robbery occurred and that this car wasnot forced off the road. Not that the defendants in the instant case didnot take an inventory, because they claim they did, but when we requested a copy of said inventory list, it just happened to be

"lost" or came up missing as the DiPino vehicle, thus, without even an inventory it makes it that much more relevant as to why the DiPino vehicle should have been preserved a nd available. To deny me exculpatory evidence as in the instant case cannot be justified.

Since the origin of this complaint I have done much more research on it and the issues presented therein and because this court has been extremely kind to me in doing something that it didnot have to do and that is giving me the opportunity to express myself in this letter, I want you to know that I do appreciate this and am going to show my appreciation by admitting something that I just discovered here recently, thus, saving the court time in this matter.

After an extensive amount of research, I found that even though the defendants did violate my constitutional rights by not having the DiPino vehicle available, I cannot prove that they did this with malicious intentions, that they used so much discretion in their unconstitutional actions that even though they were wrong and did cause harm to me, their acts were discretionary and within the scope of their authority, although I think and know that they were indeed aware and knowing that their acts were a deprivation of my constitutional rights or at least they should have known, I do not think that I can prove this because of the discretion they used in obtaining the end as already stated.

However, this is not to say that my constitutional rights werenot violated, this is only to say thatthe defendants would be entitled to "Qualified Immunity", *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct 1683, 40 LEd 2d 90 (1974); *Procunier v. Navarette,* 433 U.S. 558, 98 S.Ct. 855 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed. 214 (1975); *O'Connor v. Donaldson,* 422 U.S. 563 95 S.Ct. 2486, 45 L.Ed.2d 396, only as far as the monetary damages are required in my prayer of relief in this complaint.

But, I seeked declaratory relief therein also:

> "Enter Declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, and rule 54,57 and 58 of the Federal Rules of Civil procedure declaring that the failure of the defendants to protect the DiPino vehicle as evidence violates the Plaintiff's United States Constitutional Rights,,,"

I continued my extensive research on this matter also, I found that if the court found that the defendant are, in fact, entitled to qualified immunity, that would make a 42 U.S.C. § 1983 forum improper for the declaratory relief as requested above, because if the court did declare that the defendants act were unconstitution but they are immune from monetary damages, that would be the same as a vacated sentence because the declaratory relief as stated above would constitute a vacated sentence or something. So, I found that Habeas Corpus is the appropriate forum to request the aboved stated "declaratory judgment". Would you not agree ?

I went on in my research and I found that this court has the power and the authority to deem this matter as a habeas corpus proceeding in light of the facts presented in this letter and I so request of the court to do so. However, I lost my citations giving the court the authority to do this, but if the U.S. Supreme Court can grant certioriri on one issue and decide the case on completely different issues and merits than what it granted cerioriri on, *Procunier v. Navarette,* supra, at P. 856

> "Supreme Court's power to decide is not limited by precise terms of question presented in petition for certiorari . . ."

Mr. Chief Justice Burger, dissenting at P. 862;

> "I dissent because the Court's opinion departs from our practice of considering

only the question upon which certiorari was granted or questions "fairly comprised therein..."

Judge, if you apply the same logic to the instant case as far as the U.S. Supreme Court's deciding not being limited to precise terms etc etc..., I am quite sure that you can be so just as to deem the matter as habeas corpus proceedings.

If the court desires to deem the matter as such, we get to the question of the exhaustion of state remedies which hasnot been done on this issue of preservation of evidence as herein stated. But if the court deems this matter Habeas Corpus, I found that while exhaustion of state remedies is required by the applicable statutes, 28 U.S.C. § 2254(b) and the case law, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, (9 L.Ed. 2d 837 (1963), it must be remembered that it is a doctrine of comity, not of jurisdiction. Fay, supra at 417–420, 83 S.Ct. 822. As the Supreme Court stated in *Braden v. 30th Judicial Circuit Court OF Kentucky*, 410 U.S. 484, at 490, 93 S.Ct. 1123, at 1127 35 L.Ed. 2d 433 (1972):

> "The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a "swift and imperative remedy in all cases of illegal restraint or confinement". Secretary of State for Home Affairs v. O'brien, (1923) A.C. 603, 609 (H.L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to purposes that underlie the doctrine and that call it into existence."

However, the point is that if the court would rely on a rule of discretion, avowedly flexible, *Frisbie v. Collins*, 342 U.S. 519 (72 S.Ct. 509, 96 L.Ed. 541) (1952), yielding always to *exceptional circumstances, Bowen v. Johnson*, 306 U.S. 19,27 (59 S.Ct. 442, 446, 83 L.Ed. 455) (1939) has refused to concede jurisdiction significance to the abortive state court proceedings." Id. 372 U.S. at 426, 83 S.Ct. at 842.

I think that it is expedient to say that this court will find that this is one of those "exceptional circumstances"...

Well Judge, I guess I have said about all that would be appropriate in a letter, if nothing else, I hope that you will give me the opportunity to present all the facts and evidence pertaining to this matter in the near future.

Thank you again for giving me this opportunity and I want you to know that it is appreciate very much. One more thing, did you like my poem "Destiny & Rice " ?

Sincerely,

I am ...

(s) J. L. Deavors

Joe L. Deavors # 152398

Southern Ohio Correctional Facility

P.O. Box 45699

Lucasville, Ohio 45699