# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 18, 2001

## LESLIE SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 92-B-1012     J. Randall Wyatt, Jr., Judge**

---

**No. M2000-02814-CCA-R3-PC - Filed August 28, 2002**

---

In this appeal from the denial of post-conviction relief the appellant claims that his convictions for second degree murder and theft of property valued under $10,000 are constitutionally void or voidable because his presence in Tennessee to stand trial was secured by what he claims was a conspiracy on the part of the prosecution to deprive him of his rights under the Interstate Compact on Detainers, Tennessee Code Annotated Section 40-31-101. The appellant, who was originally charged in Tennessee with first degree murder which carries a possible punishment of death, was returned to Tennessee from the Alabama penal system by means of extradition documents and an executive agreement between the governors of Tennessee and Alabama. The appellant also claims that the post-conviction court should have issued subpoenas to certain law enforcement officials in Alabama in order to help him substantiate his claims of conspiracy in his transfer from Alabama to Tennessee, and in order to demonstrate his trial attorney's alleged ineffectiveness in litigating this conspiracy theory on direct appeal.

Because we find the issues raised herein to be utterly meritless we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

W. Casey Reed, Nashville, Tennessee, for the appellant, Leslie Smith.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jon P. Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The underlying facts surrounding the appellant's convictions for second degree murder and theft were summarized by this Court in the direct appeal of the appellant's conviction. See State v. Leslie Huel Smith, Davidson County, No. 01-C-01-9504-CR-00120 (Tenn. Crim. App., filed Sept. 13, 1996, at Nashville). A recitation of those facts is not necessary to a resolution of the appeal sub judice. Suffice it to say that following the commission of the offenses in Tennessee the appellant was arrested in Alabama where it was determined that he was an escapee from that state's prison system. He was therefore returned to the Alabama penal system to await resolution of the Tennessee charges.

The appellant was subsequently charged with first degree murder in Tennessee and his return to Tennessee on that charge was obtained through the use of the Uniform Criminal Extradition Act, Tennessee Code Annotated Section 40-9-101, et seq., coupled with the use of an executive agreement between the governors of Tennessee and Alabama. This agreement bound Tennessee to keep the appellant in custody to await execution if he received the death penalty, but to return him to Alabama if he did not receive the death penalty.

The appellant was tried and convicted of second degree murder and theft. Prior to trial in a motion to dismiss, the appellant argued the Tennessee charges against him should be dismissed because he was not tried within the time periods provided by the Interstate Agreement on Detainers (IAD), Tennessee Code Annotated Section 40-31-101, et seq.[1] Apparently the appellant had attempted to invoke the provisions of the IAD by making written demands on Alabama prison authorities for return to Tennessee for trial on the Tennessee charges. On direct appeal this Court held that the provisions of the IAD never came into play in this case because Tennessee never filed a detainer against the appellant while he was incarcerated in Alabama. Thus, we held the time constraints of the IAD for bringing a prisoner to trial were inapplicable. Therefore, the appellant's conviction was affirmed. See State v. Leslie Huell Smith, supra.

In the instant appeal the appellant argues that he is entitled to collateral relief with respect to the manner in which he was transferred to Tennessee from Alabama because of an alleged conspiracy on the part of Tennessee and Alabama authorities to deprive him of his statutory rights under the IAD, thereby depriving him of due process of law under the Fourteenth Amendment to the United States Constitution. He also contends the post-conviction court should have issued

---

[1] The Interstate Agreement on Detainers (IAD) is an interstate compact adopted by almost every state. It provides a method by which prisoners incarcerated in one state may initiate disposition of criminal charges against them in another state. The agreement also provides a procedure for prosecutors in one state to initiate the disposition of criminal charges against suspects incarcerated in the penal system of another state. In a situation where the IAD is applicable, trial of a prisoner must begin within 180 days of a properly executed request by the prisoner to dispose of the out-of-state charges against him. Art. III (a), Tenn. Code Ann. § 40-31-101. In the case of a prosecutorial request for the return of a prisoner from another state to stand trial, the trial must commence within 120 days of the prisoner's return to the state where the criminal charges are outstanding. Art. IV (c), Tenn. Code Ann. § 40-31-101.

subpoenas to certain Alabama authorities in order to assist the appellant in substantiating his claims of a conspiracy and to prove that his trial counsel was ineffective. The appellant's arguments must fail for the reasons stated below.

In analyzing this appeal, we note that a petitioner bringing a post-conviction petition bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact "are conclusive on appeal unless the evidence preponderates against the judgment." Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## METHOD OF RETURN TO TENNESSEE

The general rule of constitutional law in the United States is that the method used to return a fugitive to the jurisdiction wherein charges are pending against that fugitive will not defeat the charging jurisdiction's right to try and convict that fugitive. Frisbie v. Collins, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952); Ker v. Illinois, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886). In 1992 the United States Supreme Court reaffirmed this doctrine in the case of U.S. v. Alvarez-Machain, 104 U.S. 655, 112 S. Ct. 2188, 119 L. Ed. 2d 441 (1992) (holding that even the forcible abduction of a Mexican national in Mexico by agents of the United States government will not defeat the right of the United States to try the fugitive for narcotics charges pending in the United States).

However, prior to the Alvarez-Machain decision this Court had held that "outrageous or illegal conduct by the arresting authorities so extreme as to shock the conscience" may provide a defense to prosecution once a fugitive is returned to Tennessee. Elliott v. Johnson, 816 S.W.2d 332, 339 (Tenn. Crim. App. 1991). Elliott was premised upon interpretations of federal appellate court decisions of the 1970's which, prior to Alvarez-Machain, had departed from a strict adherence to the Ker-Frisbie doctrine discussed in the previous paragraph. After Alvarez-Machain this Court was again presented the opportunity to conform its constitutional jurisprudence to that annunciated in Alvarez-Machain. However, in Sneed v. State, 872 S.W.2d 930 (Tenn. Crim. App. 1993), this Court continued to adhere to its "shock the conscience" exception to the Ker-Frisbie doctrine. Moreover, in Sneed this Court ascribed the "shock the conscience" exception to the so-called "law of the land" provision of Art. I, Sec. 8 of the Constitution of Tennessee.[2] Id. at 934.

Finally, the Tennessee Supreme Court adopted the holding of Sneed in the case of State v. Hall, 976 S.W.2d 121, 137 (Tenn. 1998). In this case, our supreme court recognized the "shocks the conscience" exception to the Ker-Frisbie doctrine, but held that the defendant Quintero's illegal return to Tennessee from Mexico, in violation of the extradition treaty between Mexico and the

---

[2]Art. I, Sec. 8 provides in its entirety:
> "That no man shall be taken or imprisoned, or disseized, exiled, or in any manner destroyed or deprived of his life, liberty or property, but by judgment of his peers on the law of the land."

This section of the Tennessee Constitution is generally regarded as providing similar protections to that of the Fourteenth Amendment to the United States Constitution. See Riggs v. Burson, 941 S.W.2d 44 (Tenn. 1997).

United States, did not merit reversing Quintero's first degree murder conviction and death sentence. Id.

Thus, under Hall and Quintero, Elliott, and Sneed, a fugitive returned to Tennessee by authorities in this state in a manner that "shocks the conscience" may, based on an allegation that such a return violates Art. I, Sec. 8 of the Constitution of Tennessee, seek to void his or her conviction on the charges that occasioned the fugitive's return to Tennessee.

In the instant case it is arguable that the legality of the method of the petitioner's return to Tennessee has been previously determined and is thus not subject to post-conviction relief. See Tenn. Code Ann. § 40-30-206(f). However, because the petitioner alleges in this appeal that newly discovered evidence calls into question the validity of that previous determination, we will briefly address the merits of his claim.

Petitioner claims that this so-called newly discovered evidence establishes a conspiracy on the part of Tennessee prosecutors and Alabama prison officials to deny him his rights under the IAD, and that this conspiracy so "shocks the conscience" that his conviction should be voided on due process grounds. There are at least two fallacies with respect to this argument.

First, petitioner has failed to cite us to any authority for the proposition that the method used to return him to Tennessee was illegal. As noted earlier, the petitioner was returned to Tennessee from Alabama through the use of an extradition pursuant to Tennessee Code Annotated Section 40-9-101, et seq., coupled with an agreement between the governors of Tennessee and Alabama as to the terms and conditions of his rendition. We know of nothing in the IAD or the extradition act that precludes this method of rendition under appropriate circumstances such as capital cases.

Secondly, we know from our supreme court's decision in Hall, supra., that even an illegal rendition does not necessarily translate into one that "shocks the conscience" so as to violate due process. Thus, even if the petitioner's rendition to Tennessee had been illegal, any illegality would not have been of such a magnitude as to void his conviction.

For the foregoing reasons, we hold the petitioner is not entitled to relief with respect to this issue.

## ISSUANCE OF SUBPOENAS

In his final issue, the petitioner contends that the post-conviction court should have issued subpoenas for various Alabama correctional officials to assist him in establishing his claims for relief. This issue is likewise without merit.

The petitioner concedes that Alabama correctional officials reside outside the subpoena power of the Davidson County Criminal Court. He also concedes that Alabama is not a signatory state to the Uniform Law to Secure the Attendance of Witnesses From Within or Without a State in

Criminal Proceedings, Tennessee Code Annotated Section 40-17-201, <u>et</u> <u>seq</u>. We know of nothing in the post-conviction laws or any other law that entitles the petitioner to have the post-conviction court perform a futile <u>ultra</u> <u>vires</u> act.

CONCLUSION

In light of the foregoing, the judgment of the post-conviction court is AFFIRMED.


                  _____

                  JERRY L. SMITH, JUDGE